Cindy L. McNaughton, the plaintiff in an action pending in the Jefferson Circuit Court, petitions for a writ of mandamus directing the circuit court to vacate its order compelling the arbitration of her claims against the defendant United Healthcare services, Inc. ("United"). McNaughton maintains that arbitration is inappropriate because the arbitration clause contained in her employee handbook and relied on by the trial court is not part of a legally binding contract. In the alternative, McNaughton argues that the arbitration clause is void under the doctrine of unconscionability/mutuality of remedy. Because we hold that the arbitration clause was contained in a binding contract, and because we reject application of the doctrine of unconscionability/mutuality of remedy, we deny the petition.
 I.
In July 1996, United hired McNaughton as an account service coordinator to work in United's Montgomery office. In accordance with a standard United employment policy, United issued McNaughton an employee handbook and required her to sign a form acknowledging that she had received it. As a condition of employment, United requires all employees to resolve employment claims against United through binding arbitration. Thus, each employee handbook contains an acknowledgement form that incorporates an arbitration agreement. As a condition of her employment, McNaughton signed one of these acknowledgement forms that incorporates United's arbitration policy.
In February 1997, McNaughton requested a transfer from the Montgomery office to United's Birmingham office. United subsequently interviewed her for a position in Birmingham. McNaughton alleges that after the interview process, United offered her a position in Birmingham, that she left her *Page 594 
position with United in Montgomery, and that, relying on that offer, she relocated to Birmingham. However United then notified McNaughton that it had hired another person for the Birmingham position. By that time, McNaughton's former position in the Montgomery office had also been filled.
In April 1997, McNaughton sued United in a two-count complaint claiming (1) fraud based on an alleged promise by United to transfer her from United's Montgomery office to its Birmingham office, and (2) claiming intentional interference with business relations. The trial court granted United's motion to stay the proceedings, and to compel arbitration. McNaughton filed this mandamus petition.
 II.
A writ of mandamus is an extraordinary remedy that requires the showing of: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court. Ex parte Edgar, 543 So.2d 682, 684
(Ala. 1989). Although mandamus relief is rarely appropriate, it is available when a party demonstrates that he has been compelled to arbitrate a claim that he did not agree to arbitrate.[1] Exparte Beasley, 712 So.2d 338, 339-40 (Ala. 1998).
Section 2 of the Federal Arbitration Act ("FAA") provides:
 "A written provision in any . . . contract
evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable. . . ."
9 U.S.C. § 2 (emphasis added).[2] Consistent with the FAA, trial courts are required to stay or dismiss proceedings and compel arbitration when the parties have entered into a valid contract containing an arbitration agreement. Moreover, the Supreme Court of the United States has stated that the FAA establishes a strong federal policy favoring arbitration:
 "The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."
Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1,24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). These principles provide the framework within which we must determine whether the trial court erred in requiring McNaughton to arbitrate the claims arising out of her employment.[3]
 A. Binding Agreement to Arbitrate
McNaughton first argues that the acknowledgement form she signed when she accepted *Page 595 
employment with United did not create a binding agreement to arbitrate her employment claims. The acknowledgment form contains the following pertinent language:
"At-Will Employment
 "I understand that the provisions in this Handbook are guidelines and, except for the provisions of the Employment Arbitration Policy, do not establish a contract or any particular terms or condition of employment between myself and [United].
 "I understand that the employment relationship is `at will' and is based upon the mutual consent. . . .
"Specific Acknowledgments
". . . .
 Internal Dispute Resolution/Employment Arbitration Policy. . . .
 "These policies provide the opportunity for prompt and objective review of employment concerns. I understand that arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim. I agree to submit all employment related disputes based on a legal claim to arbitration under [United's] policy."
(Emphasis added.)
McNaughton argues that, because of the "at-will" nature of her employment and because of the provision expressly stating that the policies contained in the employee handbook are not binding, this Court should not construe the arbitration policy incorporated into the acknowledgment form to be a binding agreement. We disagree.
When one party proposes a standard contract to another party, the parties may, of course, agree to be bound by certain of the clauses in the proposed contract and not to be bound by others. For example, in Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615,618-19 (Ala. 1997), this Court held that an arbitration clause in a retail buyer's order was not binding because the buyer did not sign in the space provided under the arbitration clause, while he did sign in the spaces provided under other clauses of the retail buyer's order. Those clauses under which the buyer signed, indicating his agreement, were binding, but the clause under which the buyer did not sign, failing to indicate his agreement, was not binding. See id.
McNaughton's signed acknowledgement form indicates that the parties agreed to be bound by one provision of the employee handbook — the arbitration policy — but not by other provisions of the handbook. Under McCarrell, 695 So.2d at 618-19, the provision of the employee handbook to which McNaughton agreed to be bound — "I agree to submit all employment related disputes based on a legal claim to arbitration under [United's] policy" — is binding.[4] And the other provisions of the employee handbook to which McNaughton did not agree to be bound — "I understand that the provisions in this Handbook are guidelines and, except for the provisions of the Employment Arbitration Policy, do not establish a contract" — are not binding. Id. Given the clear precedent of McCarrell, to hold otherwise would treat arbitration clauses differently from other provisions of a contract, in contravention of the express holding of the Supreme Court of the United States. See Doctor'sAssociates, Inc. v. Casarotto, 517 U.S. 681, 687,116 S. Ct. 1652, 134 L.Ed.2d 902 (1996) ("Courts may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions. . . . By enacting § 2 [of the Federal Arbitration Act] . . ., Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed `upon the same footing as other contracts.'") (citations omitted).
Further, under clear Alabama contract law, United's providing at-will employment to McNaughton constituted sufficient consideration in exchange for McNaughton's agreement to arbitrate her employment disputes under United's arbitration policy. This *Page 596 
Court has consistently held that an employer's providing continued at-will employment is sufficient consideration to make an employee's promise to his employer binding. For example, inCondelles v. Alabama Telecasters, Inc., 530 So.2d 201, 204 (Ala. 1988), this Court stated that "continued [at-will] employment is sufficient consideration for signing a noncompetition agreement." (Citing Daughtry v. Captiol Gas Co., 285 Ala. 89, 93,229 So.2d 480, 483 (1969).) Similarly, United's provision of new at-will employment to McNaughton wax sufficient consideration to make McNaughton's promise to arbitrate employment disputes under United's arbitration policy a binding agreement.
These conclusions are supported by Kelly v. UHC Management Co.,967 F. Supp. 1240 (N.D.Ala. 1997), in which the United States District Court for the Northern District of Alabama held that an acknowledgment form signed upon receipt of an employee handbook and that contained language identical to the language of the acknowledgment form signed by McNaughton created a binding contract to arbitrate employment disputes. Just as with the acknowledgment form signed by McNaughton, the acknowledgment form signed in Kelly, 967 F. Supp. at 1243, provided that "the provisions in this Handbook are guidelines and, except of the provisions of the Employment Arbitration Policy, do not establish a contract." Just as with the acknowledgment form signed by McNaughton, the acknowledgement form signed in Kelly, id., provided: "I agree to submit all employment related disputes based on a legal claim to arbitration. . . ." Just as with McNaughton's promise to arbitrate under United's arbitration policy, the employees' promises in Kelly, Id. at 1260, to arbitrate under the employer's arbitration policy was supported by the consideration of at-will employment. The district court inKelly held that the acknowledgment form signed by the employees created a binding agreement to arbitrate their claims against the employer. Id. at 1260. Accord Beasley, 712 So.2d at 339 (stating that if an employee signs an acknowledgment form containing a binding arbitration clause, the employee will be required to arbitrate his claims) (citing O'Neil v. Hilton Head Hospital,115 F.3d 272, 273 (4th Cir. 1997), and Patterson v. Tenet Healtheare,Inc., 113 F.3d 832 (8th Cir. 1997)). Accordingly, we hold that the acknowledgment form signed by McNaughton created a binding agreement to arbitrate her claims against United.
 B. Unconscionability/Mutuality of Remedy
McNaughton contends that even if the language in the acknowledgment form creates a binding agreement to arbitrate, the contract is void under the doctrine of unconscionability/mutuality of remedy. United's arbitration policy allows United to choose arbitration or another forum, but does not afford the employee the same choice of forum:
 "The Policy does not require that [United] initiate the arbitration process in regard to any dispute. In addition [United] is not required to follow the steps of either [the Internal Dispute Resolution proeess] or the [Arbitration] Policy before initiating or implementing any disciplinary action, or before asserting any claim, demand or action against an employee for breach of any restrictive covenant, wrongful disclosure of confidential information, or any other actions which may constitute a breach of contract, a breach of [United's] Code of Conduct, a breach of a common law duty, or a breach or violation of either civil or criminal law.
". . . .
 "[United] reserves the right to alter, amend, modify, or revoke this policy at its sole and absolute discretion at any time with or without notice. Any alteration, amendment, modification, or revocation may be done only in writing, signed by the Senior Executive, Human Resources."
In support of her argument that the language quoted above voids her agreement to arbitrate, under the doctrine of unconscionability/mutuality of remedy[5], McNaughton *Page 597 
relies heavily on Northcom, Ltd. v. James, 694 So.2d 1329, 1338
(Ala. 1997), where two Justices on this Court stated in dictum:
 "[I]n a case involving a contract of adhesion, if it is not shown that the party in an inferior bargaining position had a meaningful choice of agreeing to arbitration or not, and if the superior party has reserved to itself the choice of arbitration or litigation, a court may deny the superior party's motion to compel arbitration based on the doctrines of mutuality of remedy and unconscionability."
Upon further consideration, we reject this dictum from Northcom, merging the distinct doctrines of unconscionability and mutuality of remedy to strike down arbitration clauses. Arbitration is not inherently unconscionable, nor is it a remedy. When interpreting the FAA, the federal courts have concluded that, consistent with the federal policy strongly favoring arbitration, Moses H. ConeMem'l Hospital 460 U.S. at 24-25, 103 S.Ct. 927, "there is nothing inherently unfair or oppressive about arbitration clauses." Coleman v. Prudential Bache Securities, Inc.,802 F.2d 1350, 1352 (11th Cir. 1986). Accord Kelly, 967 F. Supp. at 1257
("`[T]here is nothing inherently unfair or oppressive about arbitration clauses.' . . . [N]othing about the present agreement is unconscionable or overbearing.") (citation omitted). Moreover, the Supreme Court has stated: "Mere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context."Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33,111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Instead of suffering unconscionable treatment, a party, "by agreeing to arbitrate, . . . `trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" Gilmer, *Page 598 500 U.S. at 31, 111 S.Ct. 1647 (citations omitted). Thus, agreements to arbitrate are not in themselves unconscionable.[6]
Further, properly understood, the concept of mutuality of remedy has no application to arbitration agreements. In GeneralSecurities Corp. v. Welton, 223 Ala. 299, 306, 135 So. 329, 335
(1931), this Court explained the concept of mutuality of remedy:
 "`"Equity will not compel specific performance by a defendant, if after performance the common-law remedy of damages would be his sole security for the performance of the plaintiff's side of the contract." . . . "The court will not grant specific performance to plaintiff and at the same time leave defendant to the legal remedy of damages for possible future breaches on plaintiff's part." This rule, it is believed, covers the circumstances in equity where, according to the weight of authority, the court refuses its aid for lack of mutuality.'"
(Citations omitted.) "However, the law does not require that the parties have similar remedies in case of breach, and the fact that specific performance or an injunction is not available to one party is not a sufficient reason for refusing it to the other party." Restatement (Second) of Contracts, § 363 cmt. c (1981).
The doctrine of mutuality of remedy is limited to the availability of the ultimate redress for a wrong suffered by a plaintiff, not the means by which that ultimate redress is sought. A plaintiff does not seek as his ultimate redress an arbitration proceeding or a court proceeding. Instead, he seeks legal relief (e.g., damages) or equitable relief (e.g., specific performance) for his injury, and he uses the proceeding as a means to obtain that result. See Goodwin v. Ford Motor CreditCo., 970 F. Supp. 1007, 1014 (M.D.Ala. 1997) ("[A]rbitration is not a remedy, but a choice-of-forum in which to seek remedies (just as a jury trial is no more or less a remedy than a bench trial. . . ."). Thus, an arbitration proceeding is not a remedy.
Accordingly, in Goodwin, 970 F. Supp. at 1012, the United States District Court for the Middle District of Alabama stated:
 "[Northcom] . . . introduces a rather novel, if not revolutionary, doctrine of contract law. In its strong version, it holds that each party to an arbitration agreement must be able to compel the other to arbitrate disputes whenever it would be most advantageous to themselves to do so, or the agreement will not be enforced. At the very least, it holds that both sides may have to have symmetrical remedies in an adhesion contract, or it may be found unconscionable. The weight of precedent and scholarship . . . generate too much ballast for this doctrine to be able to lift off. . . ."
Accord Rollins, Inc. v. Foster, 991 F. Supp. 1426 (M.D.Ala. 1998) (reiterating that it would not accept the doctrine of unconscionability/mutuality of remedy referred to in Northcom).
Although the doctrine of unconscionability/mutuality of remedy purportedly could apply in the nonarbitration context, as suggested in the main opinion in Northcom, it directly depends on arbitration for its application: "The element of unconscionability in the context of an arbitration clause is supplied by the fact that, by agreeing to arbitrate, a party waives his right to `a remedy by due process of law' . . . and his `right of trial by jury'. . . ." Northcom, 694 So.2d at 1338-39 (citations omitted). See Goodwin, 970 F. Supp. at 1014 ("[W]hile paying lipservice to the notion that [the doctrine of unconscionability/mutuality of remedy] `is equally true as to any unconscionable term of a contract of adhesion,' . . . the [lead opinion in Northcom] relies on the uniqueness of the concept of arbitration under Alabama law to support the [doctrine]."). At bottom, this approach assigns a suspect status to arbitration agreements. Doing so flies in the face of Doctor's Associates,517 U.S. at 687, 116 S.Ct. 1652, where the Supreme Court of the United States explicitly stated that "[c]ourts may not . . . invalidate arbitration *Page 599 
agreements under state laws applicable only to arbitration provisions." (Emphasis omitted.) Accordingly, we expressly reject the Northcom dictum regarding the doctrine of unconscionability/mutuality of remedy.[7]
McNaughton entered into a legally binding agreement with United to arbitrate her claims. Because we reject the Northcom dictum, the arbitration agreement is not void on the basis of the doctrine of unconscionability/mutuality of remedy. Thus, McNaughton has not demonstrated that the trial court erred in ordering the arbitration of her claims.
WRIT DENIED.
HOOPER, C.J., and MADDOX and HOUSTON, JJ., concur.
LYONS, J., concurs specially.
ALMON, SHORES, KENNEDY, and COOK, JJ., dissent.
[1] A direct appeal is the generally accepted method for obtaining review of a trial court's order denying a motion to compel arbitration. A.G. Edwards Sons, Inc. v. Clark,558 So.2d 358, 360 360 (Ala. 1990). A petition for a writ of mandamus is the generally accepted method for obtaining review of an order granting a motion to compel arbitration. Ex parte Alexander,558 So.2d 364, 364 (Ala. 1990).
[2] McNaughton does not contest that her employment involved interstate commerce. See Allied-Bruce Terminix Companies, Inc. v.Dobson, 513 U.S. 265, 115 S. Ct 834, 130 L.Ed.2d 753 (1995) (recognizing that the FAA is applicable to only those transactions involving interstate commerce.)
[3] although the matter is not raised by McNaughton, it is clear that the FAA's exemption for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" does not apply to McNaughton's contract to arbitrate her employment claims. 9 U.S.C. § 1. The strong federal policy in favor of arbitration requires a narrow reading of the § 1 exemption. Thus, this Court has limited the § 1 exemption to seamen, railroads workers, and other workers actually involved in the interstate transportation of goods. Robert Frank McAlpine Architecture, Inc. v. Heilpern,712 So.2d 738 (Ala. 1998). Accord O'Neil v. Hilton Head Hosp.,115 F.3d 272 (4th Cir. 1997); Rojas v. TK Communications, Inc. 87 8F.3d 745, 748 (5th Cir. 1996); Asplundh Tree Expert Co. v. Bates,71 F.3d 592, 600-01 (6th Cir 1995); Miller Brewing Co. v. BreweryWorkers Local Union No. 9, 739 F.2d 1159, 1162 (7th Cir. 1984);Erving v. Virginia Squires Basketball Club, 468 F.2d 783, 785 (1st Cir. 1971).
[4] Ordinarily, in order to constiture a contract, an employee handbook must evidence a clear intention to bind the employer and the employee. Cf. Hoffman-La Roche, Inc. v. Campbell,512 So.2d 725 (Ala. 1987). In this case, the strikingly clear language of the acknowledgment form signed by McNaughton — "I agree to submit all employment related disputes based on a legal claim to arbitration under [United's] policy" — evidences such an intent.
[5] In his dissent, Justice Cook asserts that the single contract between United and McNaughton is really two contracts: (1) a nonarbitration contract to which all the consideration is allocable; and (2) an arbitration agreement to which none of the consideration is allocable. 728 So.2d at 604 (Cook, J., dissenting). He then concludes that the arbitration agreement is not binding because it is supported only by promises that United can "alter, amend, modify, or revoke" and, thus, is not supported by sufficient consideration. Id. at 605. This assertion fails, for three reasons. First, there is only one contract. United and McNaughton expressly agreed that the provisions of the employee handbook, "except for the provisions of the Employment Arbitration Policy, do not establish a contract." See Lilley v.Gonzales, 417 So.2d 161, 163 (Ala. 1982) ("Where . . . the language of the contract is unambiguous and plain in its expression, the court cannot alter the agreement by construction but rather must expound it as made by the parties."). Thus, the only contract that the parties themselves, by their own writing, agreed to the arbitration policy contained in the employee handbook.
Second, the single contract — the arbitration agreement — is supported by sufficient consideration. McNaughton agreed to arbitrate pursuant to the arbitration policy, which United reserved the right to amend. In return, United provided at-will employment to McNaughton. United's provision of at-will employment was sufficient consideration to support McNaughton's promise to arbitrate her employment-related disputes. InCondelles v. Alabama Telecasters, Inc., 530 So.2d 201, 204 (Ala. 1988) this Court rejected the argument that an employer's providing at-will employment is not sufficient consideration to support an employment-related promise by the employee:
 "[The employee] also agrues that he was paid no consideration for signing the noncompetition agreement. We note that our case law holds that continued employment is sufficient consideration for signing a noncompetition agreement."
Similarly, we reject the argument that United's providing at-will employment is not sufficient consideration to support the employment-related promise to arbitrate by McNaughton.
Third, United's promises in the arbitration policy, which it reserved the right to "alter, amend, modify, or revoke," do not deprive the contract of consideration. Of course, these revocable promises by themselves would not constitute sufficient consideration to support a contract to arbitrate. See 3 Richard A. Lord, Williston on Contracts § 7: 7, p. 89 (4th ed. 1992) ("[W]here the promisor may perform or not, solely on the condition of his whim, his promise will not serve as consideration."). However, providing at-will employment is sufficient consideration. Condelles, 530 So.2d at 204. At bottom, United gave McNaughton a job, and McNaughton in return agreed, as a condition of her employment, to arbitrate employment-related disputes pursuant to the arbitration policy as amended by United from time to time. Thus, there was sufficient consideration to bind McNaughton to arbitrate her employment-related claims. See Kelly v. UHC Management Co.,967 F. Supp. 1240, 1258-60 (N.D.Ala. 1997) (holding that an employer's reservation of right to "alter, amend or revoke the arbitration policy" in an employee handbook did not invalidate the binding agreement to arbitrate employment disputes);Maye v. Smith Barney, Inc., 897 F. Supp. 100,103 (S.D.N.Y. 1995) (holding that an employee was required to arbitrate employment disputes under arbitration policies that the employer reserved the right "to publish from time to time").
[6] McNaughton does not allege that the arbitration agreement is for any reason unconscionable.
[7] We note that McNaughton also cites Hull v. Norcom, Inc.750 F.2d 1547 (11th Cir. 1985), for the proposition that the arbitration agreement is not binding under the doctrine of "mutuality of obligation". On rehearing Northcom, Ltd. v. James,694 So.2d 1329, 1336 (Ala. 1997), this Court rejected the use of that doctrine to strike down an arbitration clause. AccordRandolph v. Green Tree Financial Corp., 991 F. Supp. 1410,1421-22 (M.D. Ala. 1997) (rejecting the "mutuality of obligation" argument, and noting that Hull was based on New York case law that was subsequently overruled).